UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/28/21
```

| | |
|---|---|
| Constantino Kosmidis, | |
| Plaintiff, | 18-cv-8413 (AJN) |
| —v— | MEMORANDUM |
| Port Authority of New York and New Jersey, *et al.*, | OPINION & ORDER |
| Defendants. | |

ALISON J. NATHAN, District Judge:

This action arises out of an arrest that took place on September 15, 2017.  Plaintiff

Constantino Kosmidis sues Defendants the Port Authority of New York and New Jersey, Port

Authority Police Sergeant Bernard Buckner, Port Authority Police Officer Steven O'Shea, Port

Authority Police Officer Alexander Velez, Jr., and Port Authority Police Officer Joseph Riccardi,

Jr. alleging violations of state and federal law.  Presently before the Court is Defendants' motion

for summary judgment.  For the reasons that follow, the motion is GRANTED in part and

DENIED in part.

## I.    Background

The following facts are drawn from the parties' statements made pursuant to Local Civil

Rule 56.1 and are undisputed unless otherwise noted.

On September 15, 2017, Kosmidis and his wife boarded a flight from Athens, Greece, to

the John F. Kennedy Airport in New York City.  Dkt. No. 98, Pl.'s 56.1 Resp., ¶ 7.  Konstantinos

Atsalis was the captain, and Carmen Dunphy and Sharon Dugan were flight attendants on the

flight.  *Id.* ¶¶ 13–15.

While on that flight, Kosmidis got in a verbal altercation with another passenger. *Id.* ¶ 11.[1]  He also walked around with an unlit cigarette in his mouth, and at various points he attempted to enter the first-class area. *Id.* ¶¶ 19–24.  Certain details of what occurred on the flight are disputed, but as relevant here, Captain Atsalis, having been informed of Kosmidis's behavior on the flight, opted to request that Port Authority Police meet the flight upon arrival. *Id.* ¶¶ 40–42; *see also id.* ¶¶ 25–39.

Defendants O'Shea and Riccardi were called to respond. *Id.* ¶ 47.  Defendant Velez also responded, having heard a radio transmission regarding a "disorderly passenger" on the flight. *Id.* ¶ 48.  After the flight landed, Captain Atsalis, along with Dunphy and Dugan, met with Port Authority officers to provide more information regarding the situation. *Id.* ¶ 49.  According to the Defendants, after arriving at the gate, O'Shea observed Defendant Buckner on the scene and was told to remove Kosmidis from the flight. *Id.* ¶ 53.  O'Shea and Riccardi then boarded the plane and escorted Kosmidis from the flight. *Id.* ¶ 54.

The parties disagree as to what happened next.  According to Kosmidis, he was "attacked" by four or five police officers *immediately* upon exiting the "accordion-like jetbridge" that led from the plane, and he claims that he was stepped on, hit, and rear-handcuffed. *Id.* ¶¶ 55–57.  The Defendants contend, though, that Kosmidis was yelling, cursing, and moving his arms around at the officers when they approached him, that he attempted to light a cigarette as officers asked for his information and travel documents, and that he appeared intoxicated. *Id.* ¶¶ 55–68.  Kosmidis does not deny that he was speaking loudly, but he asserts that he was not yelling, instead attributing his loud voice to his hearing disability, and he denies that he attempted to light a cigarette or that he was intoxicated. *Id.*  The Defendants contend that

---

[1] Kosmidis objects that whatever happened on the flight is immaterial, but he otherwise admits that an altercation occurred.

Kosmidis was cursing at them, and that he resisted when they instructed him that he could not smoke; Kosmidis counters that he only cursed at the officer after they cursed at him, and that the arrest took place before he started cursing. The Defendants also claim that as he was exiting the jetbridge, Kosmidis tried to walk up the ramp past Officer O'Shea. Kosmidis denies this, as well. *Id.* ¶ 65.

The circumstances of the arrest are also contested. According to the Defendants, Sergeant Buckner was debriefed by the Delta crew before returning to Kosmidis, and when he returned and ordered Kosmidis not to light a cigarette, Kosmidis "lunged" at Buckner. *Id.* ¶ 69. And they claim that Officer Velez grabbed Kosmidis's arm in response after believing Kosmidis was going to attack Buckner, explaining that Velez handcuffed Kosmidis in order to avoid such an attack. *Id.* ¶¶ 69–72. Following this, the officers restrained Kosmidis as Kosmidis resisted arrest, with O'Shea and Velez falling to the ground in the process. *Id.* ¶¶ 73–77. After sitting Kosmidis upright, the Defendants claim, Velez noted that Kosmidis was bleeding and had a red bruise on his face. *Id.* ¶¶ 78–79. They then claim that Velez tended to Kosmidis's wounds and asked if Kosmidis needed medical attention. *Id.* ¶¶ 80–81. The Defendants claim that Kosmidis declined help and continued to resist and insult them. *Id.* ¶¶ 82–84.

According to Kosmidis, he never lunged toward or made any aggressive move toward any police officers. He asserts instead that he was not resisting and that the officers attacked him unprompted. *Id.* ¶¶ 69–84. While Kosmidis concedes that he cursed at the officers, he denies ever physically resisting. *Id.* Kosmidis also contends that the injuries were far more serious than Defendants' description, and he denies that any officers ever tended to him or offered him any help; he instead claims that he requested an ambulance but that he was ignored. *Id.* ¶¶ 78–82, 86.

After the arrest, Officer O'Shea was instructed to write a summons for disorderly conduct. *Id.* ¶ 85. Kosmidis then spoke to Sergeant Buckner, who opted to discard the summons by tearing it up in front of Plaintiff. According to the Defendants, Buckner exercised his discretion to do so because Kosmidis calmed down and began following the officers' instructions. *Id.* ¶¶ 88–89. Kosmidis's handcuffs were then removed. *Id.* ¶ 90. All told, Kosmidis was in the custody of the Defendants for around 45 minutes to an hour. *Id.* ¶ 91.

Kosmidis asserts that on the date of the incident, he was afflicted by a hearing impairment that made it difficult for him to understand what he was being told by the officers. He claims that for over a decade prior to 2011, he wore hearing aids due to this impairment. Around 2011, however, Kosmidis stopped wearing hearing aids because he could no longer afford them. Dkt. No. 99, Pl.'s 56.1 Statement, ¶¶ 103–111. Thus, he was not wearing hearing aids on the date of the incident. *Id.* The Defendants object to Kosmidis's testimony that his hearing was impaired on the date of the incident, and they more generally claim that Kosmidis's testimony regarding his hearing issues is irrelevant to the case. Dkt. No. 106, Def. 56.1 Opp'n, ¶¶ 103–111.

## II.    Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must "construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (internal quotation marks and alterations omitted). If the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial" and summary

judgment should be granted to the moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).

The movant bears the initial burden of presenting evidence on each material element of its claim or defense and demonstrate that he is entitled to relief as a matter of law. *See Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). But when the burden of proof at trial would fall on the non-moving party, the moving party may meet its burden by "point[ing] to a lack of evidence . . . on an essential element" of the non-moving party's claim. *Simsbury-Avon Preservation Club, Inc. v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009). There is a genuine issue of material fact if a reasonable jury could decide in the non-moving party's favor. *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 45 (2d Cir. 2000). The Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks omitted).
To survive a summary judgment motion, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). In doing so, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . and may not rely on conclusory allegations or unsubstantiated speculation." *Id.* (internal quotation marks and citation omitted).

## III.    Discussion

Defendants move for summary judgment on all counts. For the reasons that follow, that motion is GRANTED in part and DENIED in part.

### A.  False Arrest

The Court first addresses Kosmidis's federal and state false arrest or false imprisonment claims.  "A Section 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted); *see also Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004).  Moreover, "false arrest is a species of false imprisonment, such that the two share the same elements under New York law." *See Shaeed v. City of New York*, 287 F.Supp.3d 438, 448 (S.D.N.Y. 2018). The elements of a false imprisonment claim are: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003) (quoting *Weyant*, 101 F.3d at 853).

An arrest of a criminal suspect by a law enforcement officer with probable cause constitutes a "privileged" confinement for purposes of that analysis. *Decker v. Campus*, 981 F. Supp. 851, 856 (S.D.N.Y. 1997).  Thus, the existence of probable cause to arrest is a complete defense to an action for false arrest when the arrest is conducted by a law enforcement officer. *Weyant*, 101 F.3d at 852.  Probable cause exists when at the time of the arrest the officers have "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852.  The standard is objective, and the officers' subjective beliefs and motivations are irrelevant to that analysis.  *Whren v. United States*, 517 U.S. 806, 813 (1996).  The existence of probable cause "must be determined on the

basis of the information reasonably available to the arresting officer at the time of the arrest." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 570 (2d Cir. 1996).

The Defendants claim that the officers had probable cause to arrest Kosmidis for disorderly conduct. As the Defendants argue, in New York, a person may be found guilty of disorderly conduct under a number of different subsections, including when "with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof: (1) He engages in fighting, tumultuous, or threatening behavior, or . . . (3) In a public place, he uses abusive or obscene language, or makes an obscene gesture." *See* New York Penal Law, Section 240.20. In the alternative, the Defendants argue that there is no genuine dispute of material fact that they are entitled to qualified immunity. The purpose of qualified immunity is to "give government officials breathing room to make reasonable but mistaken judgments." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). In the context of false arrest claims, "an arresting officer will . . . be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause' to arrest." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). "Arguable probable cause" exists "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)). "Qualified immunity from suit for false arrest is in part, therefore, a matter of second-order reasonableness: an officer is immune if it was *reasonable* for him to believe, *reasonably*, that the plaintiff was breaking the law." *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 416 (2d Cir. 1999).

Genuine issues of material fact preclude summary judgment on these claims. Namely, the Defendants' argument that probable cause existed hinges on their version of the facts. If the

Defendants are correct that Kosmidis lunged at Sergeant Buckner, threatened the officers with violence, or used abusive or obscene language before being arrested, a reasonable jury could find that probable cause existed to arrest him.  But Kosmidis's testimony, which is part of the record, disputes that he ever acted aggressively, threatened the officers, or physically resisted arrest. Indeed, Kosmidis contends that he was arrested without provocation and that he was attacked by the officers from behind.  And while Kosmidis concedes that he cursed at the officers, according to his testimony he only did so *after* he was arrested.  *See Fernandez v. City of N.Y.*, 457 F. Supp. 3d 364, 386–87 (S.D.N.Y. 2020) ("Because the brothers' verbal altercation on the sidewalk happened after David's arrest, that altercation did not provide probable cause for that arrest."). All of the Defendants' probable cause arguments, that is, rely on the Court's adoption of contested facts.

The Court's role at the summary judgment stage is not to step into the factfinding role and to determine how best to resolve conflicting interpretations about material facts.  Rather, "[a]ssessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."  *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996).  There is a limited exception to the rule that courts may not assess credibility at the summary judgment stage in "the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete." *Jeffreys v. City of N.Y.,* 426 F.3d 549, 554 (2d Cir. 2005); *see also id.* at 555 (affirming grant of summary judgment dismissing excessive force suit brought under 42 U.S.C. § 1983 where the plaintiff relied exclusively on his own testimony, which was "replete with inconsistencies and improbabilities") (internal quotation marks omitted).  The record is clear that Kosmidis relies primarily on his own testimony to contest the Defendants' evidence of the facts.  Still, the

exception described in *Jeffreys* is inapplicable here because Kosmidis's testimony is not internally contradictory or so rife with inconsistencies as to be facially implausible. *See Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010) ("Adhering to the ordinary rule that when the defendant moves for summary judgment, we construe the evidence in the light most favorable to the plaintiff and draw all reasonable inferences in her favor, we decline to conclude at this stage of the proceedings that Fincher's testimony may be deemed discredited." (citation omitted)). In light of this, the Court cannot agree with the Defendants that they are entitled to summary judgment. The motion is DENIED as to Kosmidis's federal and state false arrest and false imprisonment claims.

For the same reason, the Court also cannot determine at this juncture whether the officers are entitled to qualified immunity. As noted above, even if probable cause did not ultimately exist, the individual defendants could still be entitled to qualified immunity on the basis of "arguable probable cause," which turns on whether "a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law." *Cerrone v. Brown*, 246 F.3d 194, 202–03 (2d Cir. 2001) (internal quotation marks omitted) (citation omitted). The same genuine issues of material fact that preclude a finding of probable cause govern the arguable probable cause analysis. If the factfinder ultimately credits Kosmidis's version of the facts—in which the officers arrested Kosmidis without prior provocation or warning—the jury may also conclude that there was no *arguable* probable cause. Thus, issues of fact preclude granting summary judgment to the individual defendants on the false arrest claim on immunity grounds.

The motion is accordingly DENIED as to the false arrest and false imprisonment claims.

9

### B.  Assault, Battery, and Excessive Force Claims

The Court turns next to the Defendants' contention that they are entitled to summary judgment on Kosmidis's § 1983 excessive force claim and his state law assault and battery claims.  Here, too, genuine issues of material fact preclude summary judgment.

The Supreme Court has held that "claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor,* 490 U.S. 386, 395 (1989).  To determine whether the amount of force used is reasonable, a reviewing court must take into consideration the "totality of the circumstances faced by the officer on the scene," *Lennon v. Miller,* 66 F.3d 416, 425 (2d Cir. 1995), and assess whether the officer's actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Graham,* 490 U.S. at 397.  New York law regarding assault and battery parallels this standard.  *See Randolph v. Metropolitan Transportation Authority*, 2018 WL 2943744, *6 (S.D.N.Y. June 12, 2018).

Not all uses of force in the context of an arrest are actionable, since it is well-settled that "[t]he right to make a lawful arrest carries with it the right to use reasonable force to effectuate that arrest."  *Lieberman v. City of Rochester*, No. 07-CV-6316, 2011 WL 13110345, at *4 (W.D.N.Y. Apr. 29, 2011), *aff'd*, 558 F. App'x 38 (2d Cir. 2014)).  Indeed, *some* degree of force in the context of a lawful arrest is to be expected, particularly if the person being arrested resists or attempts to do so.  *Sullivan v. Gagnier*, 225 F.3d 161, 165–66 (2d Cir. 2000).  But officers do not get *carte blanche* in such circumstances to use force; rather, "[t]he force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer."  *Id.*

A number of genuine issues of material fact exists.  Most notably, and as discussed above, there are considerable issues of material fact regarding the circumstances of the arrest and whether Kosmidis was acting aggressively or in a threatening fashion.  How the factfinder resolves that question may ultimately be determinative regarding whether the use of force, and the amount of force, was proper or excessive.  The Defendants' contention that Kosmidis "lunged" at Sergeant Buckner figures prominently in their argument that the use of force, and the amount of force used, was proper.  But that fact, like other relevant facts (including whether Kosmidis was threatening the officers and whether he was acting aggressively in other ways), is contested.  And in light of that, summary judgment is improper.

In addition, the Court rejects the Defendants' contention that they are entitled to judgment as a matter of law because Kosmidis's injuries were *de minimis*.  First, Kosmidis's testimony asserts that his head was covered in blood, he had scrapes and bruises on his forehead, nose, eye, and arms, and that he suffered longer-term injuries including ongoing pain and dizziness.  A reasonable jury could conclude that Kosmidis's injuries were more than *de minimis*. In any event, the Defendants rely on Eighth Amendment jurisprudence for the rule that *de minimis* injuries preclude excessive force liability.[2]  But this is not an Eighth Amendment case. Where plaintiffs allege excessive use in the course of an arrest or attempted arrest, the excessive force claims are based on the Fourth Amendment.  *See Tierney v. Davidson*, 133 F.3d 189, 199 (2d Cir. 1998).  The Second Circuit has not definitively resolved the question of whether excessive force claims brought under the Fourth Amendment are assessed under that same

---

[2] Even in the Eighth Amendment context, courts have typically distinguished between *de minimis* use of force and *de minimis* injuries; while "a de minimis use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), an Eighth Amendment claim of excessive force "may be established even if the victim does not suffer serious or significant injury, provided that the amount of force used is more than *de minimis*."  *United States v. Walsh*, 194 F.3d 37, 47–48 (2d Cir. 1999) (cleaned up).

rubric, but other circuits have concluded that there is no *de minimis* injury requirement in Fourth Amendment excessive force claims; district courts, meanwhile, are split on this issue. *See Rizk v. City of New York*, 462 F. Supp. 3d 203, 222–24 (E.D.N.Y. 2020) (collecting cases). The Court need not resolve this question, since genuine issues of material fact preclude summary judgment.

For these reasons, the motion is DENIED as to the excessive force, assault, and battery claims.

### C. Punitive damages

The Defendants next assert that Kosmidis's claim for punitive damages as directed to the Port Authority must also be dismissed because the Port Authority as a government entity is immune from such damages. Kosmidis does not respond to that section of the Defendants' brief. But in any event, the Defendants are correct that as a matter of law, punitive damages cannot be assessed against the Port Authority. "As a government entity, the Port Authority is immune from punitive damages." *Rose v. Port Auth. of New York & New Jersey*, 13 F. Supp. 2d 516, 524 (S.D.N.Y. 1998) (collecting cases). This is so because the general rule that municipalities are not subject to punitive damages applies with equal force to bistate entities like the Port Authority. *See Rose*, 13 F. Supp. 2d at 524; *see also City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 261 (1981).

Accordingly, summary judgment is GRANTED as to any claim for punitive damages directed at the Port Authority.

### D. *Monell* claim

The Defendants have moved for summary judgment on Kosmidis's Section 1983 claims against the Port Authority. For purposes of § 1983 liability, the Port Authority is treated as a municipal entity. *Mack v. Port Auth. of N.Y. & N.J.*, 225 F. Supp. 2d 376, 382 & n.7 (S.D.N.Y.

2002).  "[M]unicipalities may be sued directly under [Section] 1983 for constitutional

deprivations inflicted upon private individuals pursuant to a governmental custom, policy,

ordinance, regulation, or decision."  *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)

(citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)).  Under *Monell* and its

progeny, "municipalities are subject to liability for Section 1983 claims, not under a theory of

*respondeat superior*, but rather on the basis that their policies or customs inflicted the alleged

injuries."  *Holden v. Port Auth. of New York & New Jersey*, No. 17-CV-2192 (JGK), 2021 WL

681040, at *7 (S.D.N.Y. Feb. 22, 2021).

      To state a *Monell* claim for municipal liability under Section 1983, a plaintiff must

plausibly allege "(1) actions taken under color of law; (2) deprivation of a constitutional or

statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality

caused the constitutional injury."  *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008).  The

fifth element has two separate requirements: a plaintiff must plausibly allege both the existence

of a municipal policy and that the policy caused (*i.e.*, was the "moving force" behind) plaintiff's

injury.  *Id.* at 37–38.  The "moving force" requirement is the equivalent of proximate cause,

*Cash v. County of Erie*, 654 F.3d 324, 341–42 (2d Cir. 2011), and is generally a question of fact,

*Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir. 2000).  The official policy requirement, meanwhile,

may be met by showing "a practice so persistent and widespread, or permanent and well

settled[,] as to constitute a custom or usage with the force of law and to imply the

constructive knowledge of policymaking officials," or by "a failure to train or supervise

subordinates amount[ing] to deliberate indifference to the rights of those with whom [the

municipality's employees] come into contact."  *Felix v. City of New York*, 344 F. Supp. 3d

644, 653 (S.D.N.Y. 2018) (collecting cases).

As the Defendants note, Kosmidis has not shown, or attempted to show, that there was a written policy condoning the kind of behavior that Kosmidis alleges took place. Nor does Kosmidis seek to establish that the practices alleged in his Amended Complaint are so persistent or widespread as to constitute custom or usage with the force of law. Those theories, that is, are inapplicable here. Instead, for purposes of the official policy requirement, Kosmidis argues that the Port Authority is liable for failing to supervise, discipline, and train the officers in question. *See* Pl. Opp'n Br. at 17–21. His failure to supervise and discipline claims are predicated on his factual allegations relating to the use of excessive force. His failure to train claim, meanwhile, is predicated on two separate factual bases: The first relates to the use of excessive force during the arrest, and the second relates to the failure to train officers to interact with hard-of-hearing individuals.

While there is some difference between failure to train claims and other kinds of supervisory liability claims, all of the claims require a showing of "deliberate indifference" to prevail. *See Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 WL 1379652, at *19 (S.D.N.Y. Mar. 26, 2015). Thus, to succeed on a theory of liability based on a failure to supervise, discipline, or train, a plaintiff must establish the requisite "deliberate indifference" by (1) "offer[ing] evidence from which a reasonable jury could conclude that a policy-maker knows to a moral certainty that her employees will confront a given situation;" (2) "show[ing] that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation;" and (3) "show[ing] that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Green v. City of N.Y.*, 465 F.3d 65, 80–81 (2d Cir. 2006) (cleaned up); *see also Walker v. City of New York*, 974 F.2d 293, 297–99 (2d Cir.

1992).  This standard is by design stringent, "requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal quotation marks and citation omitted).  That is, a plaintiff must show that the municipality had notice, actual or constructive, that the inadequacy or failure to supervise was causing civil rights violations.  *Id.*

The Court turns first to Kosmidis's claim that the Port Authority is liable for failing to supervise or discipline the officers, which posits that such a failure to supervise or discipline caused the incident in question.  Kosmidis bases this claim on a prior civil rights case brought against Sergeant Buckner in which a jury found Buckner liable for excessive force and assessed $71,000 against him in compensatory damages and $33,000 in punitive damages.  *See* Dkt. No. 99, Pl.'s 56.1 Statement, ¶¶ 147–158.  Kosmidis claims that despite that case being brought against Buckner, the Port Authority failed to take any disciplinary action against him—and that they paid the damages assessed against him.  From there, he claims that failing to discipline Buckner emboldened him to continue committing constitutional violations.  The parties dispute whether evidence from that prior litigation is admissible, but the Court need not reach that question because even assuming that Kosmidis can rely on that evidence and drawing all reasonable inferences in his favor, the Port Authority is entitled to judgment as a matter of law. Specifically, it is not the case that "a municipality is required to discipline every officer upon a finding of wrongdoing."  *Posr v. City of New York*, 835 F. Supp. 120, 125 (S.D.N.Y. 1993), *aff'd*, 22 F.3d 1091 (2d Cir. 1994); *see also Butler v. City of Norman,* 992 F.2d 1053, 1056 (10th Cir. 1993) ("[W]e cannot hold that the failure of a police department to discipline in a specific instance is an adequate basis for municipal liability under *Monell.*").  Indeed, ordinarily "allegation[s] of numerous claims of excessive force" are insufficient to sustain an inference of

deliberate indifference due to failure to supervise absent a showing that "meaningful attempts to investigate repeated claims of excessive force are absent." *Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 WL 1379652, at *21 (S.D.N.Y. Mar. 26, 2015).  Other than the evidence relating to the prior litigation involving Buckner, Kosmidis has not provided any evidence that would plausibly support the proposition that the supervisors knew "to a moral certainty" that Buckner would act in similar fashion in the future.  In addition, Kosmidis has not provided any evidence regarding whether the Port Authority investigated the claim or otherwise took preventative steps, instead relying exclusively on Buckner's deposition testimony that he was not disciplined in relation to the incident.  Even drawing all inferences in Kosmidis's favor, the Court concludes that on this record, no reasonable jury could conclude that the Port Authority acted with deliberate indifference in light of a single incident in which Buckner was charged with excessive force.

The Court turns next to Kosmidis's claim that the Port Authority is liable for failing to train Buckner and the other officers to interact with hard-of-hearing individuals.  In addition to the three elements listed above, a plaintiff bringing a failure to train claim at the summary judgment stage must "identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007) (internal quotation marks omitted).  With respect to this claim, Kosmidis charges that Buckner was never trained to interact with hard-of-hearing individuals.  The Defendants do not dispute this.  *See* Dkt. No. 99, Def. 56.1 Resp., ¶ 157.

The record in this case is far too deficient to sustain a claim that the Port Authority acted with deliberate indifference.  Ordinarily, a plaintiff bringing a failure to train claim must show

"[a] pattern of similar constitutional violations by untrained employees." *Connick v. Thompson*,

563 U.S. 51, 62 (2011) (quoting *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409

(1997)).  This is so because "[w]ithout notice that a course of training is deficient in a particular

respect, decisionmakers can hardly be said to have deliberately chosen a training program that

will cause violations of constitutional rights." *Id.*  It is possible to prevail without showing a

pattern of constitutional violations only when "the unconstitutional consequences of failing to

train [are] so patently obvious that a city could be liable under [Section] 1983 without proof of a

pre-existing pattern of violations."  *Id.* at 64; *see also City of Canton, Ohio v. Harris*, 489 U.S.

378, 390 n.10 (1989) (noting that the need to train officers in the constitutional limitations on the

use of deadly force "can be said to be so obvious" that "failure to do so could properly be

characterized as deliberate indifference to constitutional rights.").

 Kosmidis provides no evidence from which a reasonable jury could conclude that any

policymakers knew "to a moral certainty" that his employees would confront such a situation.

*Green*, 465 F.3d at 80–81.  He also does not present evidence that might support the proposition

that failure to provide this training is so obvious as to warrant departure from the ordinary rule

that a pattern of constitutional violations is necessary to prevail on such a claim.  Furthermore,

Kosmidis does not provide any evidence to support the proposing that the situation would be one

in which employees would face difficult choices such that training or supervision would have

helped.  *Id.*  And Kosmidis also fails to furnish any evidence to show that the wrong choice by a

Port Authority officer will "frequently cause the deprivation of a citizen's constitutional rights."

*Id.*  Rather than introducing such evidence, as would be necessary for the claim to survive

summary judgment, Kosmidis asks the Court to assume the truth of those claims.  At this stage,

that is insufficient.  On this record, given Kosmidis's lack of evidence to establish those

necessary elements, no reasonable jury could conclude that any policymakers acted with deliberate indifference.

For the reasons stated above, the Court concludes that the Defendants are entitled to summary judgment on the *Monell* claim.

### E.  Negligent Hiring

Kosmidis initially brought a negligent hiring claim under New York state law.  The Defendants do not dispute that at the time of the arrest, the officers involved were acting within the scope of their employment.  Under state law, "where an employee is acting within the scope of his or her employment, thereby rendering the employer liable for any damages caused by the employee's negligence under a theory of respondeat superior, no claim may proceed against the employer for negligent hiring or retention."  *Karoon v. New York City Transit Auth.*, 241 A.D.2d 323, 324, 659 N.Y.S.2d 27, 29 (1997); *see also Schoolcraft v. City of N.Y.*, 103 F. Supp. 3d 465, 521 (S.D.N.Y. 2015) (collecting cases).

After the Defendants moved for summary judgment on the claim, Kosmidis indicated that he would "withdraw[] his claim for negligent hiring, screening, retention, supervision, and training."  Dkt. No. 100, Pl.'s Opp'n Br., at 2 n.1.

The Defendants' motion is therefore GRANTED as to the negligent hiring claim.

### F.  Failure to intervene

The Defendants also move for summary judgment on Kosmidis's failure to intervene claim.  Their sole argument is that they are entitled to summary judgment because there was probable cause for Kosmidis's arrest.  *See* Def. Br. at 15 (citing *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014)).  Because the Court concludes that genuine issues of material fact as to probable cause, *see infra*, and because the Defendants have advanced no other theory as to why

they are entitled to summary judgment on this claim, the motion for summary judgment is DENIED as to Kosmidis's failure to intervene claim.

### G. ADA and Rehabilitation Act claims

The Court turns next to Kosmidis's claims under the ADA and the Rehabilitation Act, which are asserted only against the Port Authority.  The standards provided by § 504 of the Rehabilitation Act and Title II of the ADA are nearly identical, and courts typically consider claims under the two statutes together.  *McElwee v. Cty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012). To establish such a claim, a plaintiff must demonstrate that "(1) he is a qualified individual with a disability;" (2) "the defendant is subject to one of the [a]cts;" and (3) "he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of his disability." *Disabled in Action v. Bd. of Elections in City of New York*, 752 F.3d 189, 196–97 (2d Cir. 2014) (internal quotation marks and citation omitted).  It is undisputed that the Port Authority is subject to the acts.  But the Defendants claim that Kosmidis cannot establish the first or third elements of the analysis.

The Court turns first to whether Kosmidis is a "qualified individual with a disability."  To demonstrate that he has a disability, a plaintiff "must first show that she suffers from a physical or mental impairment," then "identify the activity claimed to be impaired and establish that it constitutes a major life activity," and finally "show that her impairment substantially limits the major life activity previously identified." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 147 (2d Cir. 2002) (cleaned up).  The Court assumes that Kosmidis has shown that he suffers from a physical impairment related to his hearing.  In addition, the ADA includes "hearing" in its definition of "major life activities."  42 U.S.C. § 12102(2)(A).

19

Nonetheless, Kosmidis's ADA and Rehabilitation Act claims fail because he has not adduced evidence to show that the impairment is "substantially limit[ing]." To determine whether a major life activity is substantially limited by an impairment, courts in this circuit consider "the nature and severity of the impairment; its duration or expected duration; and the existence of any actual or expected permanent or long term impact." *Capobianco v. City of New York*, 422 F.3d 47, 57 (2d Cir. 2005). In the context of an employment discrimination case, the Second Circuit has counseled that the inquiry "must focus primarily on whether the claimant is unable to perform the variety of tasks central to most people's daily lives." *Id.* at 59 (internal quotations omitted). Even those impairments that affect major life activities may be insufficient if a plaintiff fails to show that the impairment is substantially limiting. *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 160 (2d Cir. 2016). To be sure, the ADA expressly directs courts to construe the definition of disability "in favor of broad coverage." 42 U.S.C. § 12102(4)(A); *see also Grullon v. Admin. for Children's Servs.*, No. 18-CV-3129 (LJL), 2021 WL 981848, at *12 (S.D.N.Y. Mar. 16, 2021). To that end, the question of whether an impairment is a "disability" under the ADA typically "should not demand extensive analysis." *Glaser v. Gap Inc.*, 994 F. Supp. 2d 569, 574 (S.D.N.Y. 2014) (citing Pub.L. 110–325, § 2(b)(5), 122 Stat. at 3553–54).

But even drawing all inferences in Kosmidis's favor, and despite the leniency of the applicable standard, the record is devoid of evidence that could even plausibly establish that Kosmidis's impairment "substantially limits" his hearing as defined by the statute. Kosmidis relies on his own testimony regarding his hearing issues. As already noted, in his testimony he claimed that he wore hearing aids for about ten or fifteen years prior to 2011, and that he had seen a doctor about his hearing issues. *See* Dkt. No. 99, Pl.'s 56.1 Statement, ¶¶ 107–08. He stopped wearing the hearing aids in 2011, in part due to cost; in 2019, he resumed wearing

20

hearing aids. *Id.* ¶¶ 109–11. Kosmidis also points to the fact that on the date of his deposition, his translator said that Kosmidis had difficulty hearing her. *Id.* ¶ 104.

Even assuming those facts are true, no reasonable jury could conclude that Kosmidis's impairment fits the "substantially limit[ing]" mold. He presents no evidence, for instance, as to the severity of his hearing issues, other than conclusory testimony that his impairment was severe. Indeed, Kosmidis's testimony does not address how the lack of hearing aids impacted his ability to function; the conclusory nature of his testimony provides no evidence regarding the severity of the impairment or the effect the impairment had on his ability to function on the date of the incident. It is, at most, a generalized complaint of hearing issues with no context that would allow the factfinder to determine its nature or its severity. Given this, and considering the lack of any other corroborating evidence, even drawing all reasonable inferences in Kosmidis's favor, no reasonable jury could conclude that, based on that evidence, the impairment is substantially limiting. *Cf. Boghossian v. Hudson Meridian Constr. Grp., LLC*, No. 09 CIV. 8893 (AKH), 2011 WL 13176012, at *3 (S.D.N.Y. June 20, 2011), *aff'd sub nom. Boghossian v. Hudson Meridian Const. Grp., LLC*, 475 F. App'x 806 (2d Cir. 2012) (noting that even though the plaintiff had vision issues, "[a] generalized complaint of blurred vision, without any evidence to show its nature or severity, its duration, or the existence of any impediment or long-term impact, is insufficient to demonstrate a substantial limitation."). As a result, Kosmidis cannot establish the first necessary element of his ADA and Rehabilitation Act claims, and the claims fail.

For these reasons, Defendants' motion is GRANTED as to these claims.

### H.  Intentional Infliction of Emotional Distress

The Defendants next move for summary judgment on Kosmidis's claim for intentional infliction of emotional distress.  The motion is GRANTED as to that claim.

To sustain a claim for intentional infliction of emotional distress under New York Law, a plaintiff must demonstrate: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress.  *See Druschke v. Banana Republic, Inc.*, 359 F. Supp. 2d 308, 314 (S.D.N.Y. 2005).  "In New York, recovery of an intentional infliction of emotional distress claim is allowed only as a last resort, when traditional tort remedies are unavailable."  *Sepulveda v. City of New York*, No. 01-CV-3054 (DC), 2003 WL 21673626, at *6 (S.D.N.Y. July 17, 2003) (Chin, J.) (cleaned up).  Thus, "[n]o intentional infliction of emotional distress claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability.'"  *Id.* (cleaned up).

The conduct underlying Kosmidis's claim for intentional infliction of emotional distress is entirely encompassed by his false arrest and excessive force claims.  Kosmidis points to no other conduct that might sustain the claim, and as a result the claim is legally insufficient.  Thus, the Defendants are entitled to summary judgment, and the motion is GRANTED as to this claim.

### I.  Negligence

The Court turns next to Defendants' argument that they are entitled to summary judgment on Kosmidis's negligence claim; for the reasons that follow, the motion is GRANTED as to this cause of action.

It is well-settled that when a plaintiff asserts excessive force and assault claims which are premised upon defendants' allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie.  *See, e.g.*, *Dineen ex rel. Dineen v. Stramka*, 228 F. Supp. 2d 447, 454

(S.D.N.Y. 2002); *Mazurkiewicz v. New York City Transit Auth.,* 810 F.Supp. 563, 570–71 (S.D.N.Y.1993) (holding that a "[p]laintiff cannot argue that defendants engaged in intentional conduct that forms the basis of an assault and § 1983 excessive force claim and also argue that defendants were negligent towards plaintiff"). Kosmidis provides no authority for the proposition that he can argue negligence in the alternative where the crux of his other claims require intentionality. *See* Pl. Opp'n Br. at 25. And since Kosmidis's claims against the Defendants are all premised on intentional conduct, his claim for negligence must be dismissed. *See Dineen*, 228 F. Supp. 2d at 454.

Thus, summary judgment is GRANTED as to this claim.

**J. First Amendment**

The Defendants next move for summary judgment on Kosmidis's First Amendment retaliation claim. To prevail on such a claim, a plaintiff must show that "(1) he has an interest protected by the First Amendment; (2) the Defendant[s'] actions were motivated or substantially caused by his exercise of that right; and (3) the Defendant[s'] actions effectively chilled the exercise of the Plaintiff's First Amendment rights." *See Galarza v. Monti*, 327 F. Supp. 3d 594, 603 (S.D.N.Y. 2018).

The Defendants rest their argument on the basis that probable cause defeats any First Amendment retaliation claim. *See Connell v. Signoracci*, 153 F.3d 74, 79 (2d Cir. 1998). As already noted, however, genuine issues of material fact preclude a finding of probable cause. Because the Defendants advance no other argument in favor of their summary judgment motion on this point, the motion is DENIED.

### K.  Fourteenth Amendment

The Defendants next move to dismiss Kosmidis's Fourteenth Amendment claims, arguing that any Fourteenth Amendment allegations brought in the Amended Complaint are both unidentifiable and duplicative.  Dkt. No. 90, Def's Br., at 22.  It is true that "[a] § 1983 claim for false arrest implicates both Amendments because the Fourth Amendment applies to the States pursuant to the Fourteenth Amendment."  *Micalizzi v. Ciamarra*, 206 F. Supp. 2d 564, 579 (S.D.N.Y. 2002).  But the gravamen of the alleged constitutional violations in this case is found in the Fourth Amendment.  The Amended Complaint does not articulate a theory of a Fourteenth Amendment violation, and Kosmidis does not respond to Defendants' arguments in his opposition brief to the present motion.  Furthermore, the Court cannot discern any attempt by Kosmidis to assert a standalone Fourteenth Amendment.  "Federal courts may deem a claim abandoned when a party opposing summary judgment fails to address the [movant's] argument in any way."  *Collins v. City of New York*, 295 F. Supp. 3d 350, 361 (S.D.N.Y. 2018) (citing *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) (alterations in original)).  In line with this, and in light of Kosmidis's failure to address the Defendants' arguments, the Court concludes that he has abandoned any such Fourteenth Amendment claim.

Thus, to the extent that Kosmidis sought to assert such a separate Fourteenth Amendment claim, the Defendants' motion is GRANTED.

### L.  New York state constitutional claims

Finally, Kosmidis initially brought claims predicated on the New York state constitution. After the Defendants moved for summary judgment on the claim, Kosmidis indicated that he "withdraws his New York State Constitutional claims."  Dkt. No. 100, Pl.'s Opp'n Br., at 2 n.1. The Defendants' motion is therefore GRANTED as to those claims.

### IV.   Conclusion

For the reasons stated above, the Defendants' motion for summary judgment is GRANTED in part and DENIED in part.  It is granted as to any claims brought for punitive damages against the Port Authority; Plaintiff's *Monell* claim against the Port Authority; Plaintiff's negligent hiring claim; the standalone negligence claim; the intentional infliction of emotional distress claim; the ADA and Rehabilitation Act claims; any standalone Fourteenth Amendment claim; and any New York state constitutional claims.  Those claims are accordingly dismissed.  The Defendants' motion is denied as to all other claims.

The Court hereby schedules a pre-trial conference for October 25, 2021 at 1:00 p.m.  By October 18, 2021, the parties are ORDERED to meet and confer and submit a joint letter proposing approximate trial dates and a schedule for the submission of the pre-trial materials identified in Rule 6 of the Court's Individual Practices in Civil Cases.  Due to the COVID rules for centralized jury trial scheduling in this district and the Court's current schedule (including its heavy criminal docket), the Court is not available for a jury trial until April 2022.  The parties must bear this in mind in their discussions.  The parties may consider whether they wish to consent to the Magistrate Judge for all purposes as the Magistrate Judge will likely be able to try the case sooner.  The parties shall also indicate if they seek a referral to the Mediation Program or to the Magistrate Judge for settlement discussions.

This resolves Dkt. No. 88.


SO ORDERED.


25

Dated: September 28, 2021
   New York, New York

_____
ALISON J. NATHAN
United States District Judge