

March 27, 2023

**VIA PACER**

Honorable Jennifer L. Rochon, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

  Re:   Athina Kosmidis v. The Port Auth.ority of New York and New Jersey, et al.
         Docket No.: 18-cv-08413-(JLR)(RWL)

Dear Judge Rochon:

      This joint letter is submitted in response to the Court's order on February 24, 2023 to submit (1) the requested process for special interrogatories to the jury; and (2) the list of special interrogatories.[1]

*Requested Process for Special Interrogatories, Defendants' Position*:

      Defendants request that the jury verdict form begin with a liability determination. If any liability is found, then the jury should be presented with the special form interrogatories next. Should the jury find that the police officers' conduct was objectively reasonable based on the answers to the special interrogatories, then both compensatory and punitive damages are not warranted against the individual defendants and not appropriate determinations for the jury. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Therefore, presenting the special interrogatories prior to the jury determining damages will prevent any potential inconsistent verdict and streamline the issues on damages.

      Posing the special interrogatories to the jury before the issue of damages may alleviate the need to question the individual officers about their financial ability to pay a punitive damages award as the individual defendants are covered for compensatory damages, but not punitive damages under the applicable collective bargaining and indemnification agreements. The individual defendants consequently bear the burden of demonstrating to the jury their financial conditions and ability to pay a potential punitive damages award. *See Patterson v. Balsamico*, 440 F.3d 104, 122 (2d Cir. 2006).[2] The testimony of the individual defendants would permit the jury,

---

[1] The list of special interrogatories proposed by Defendants, with Plaintiff's objections thereto, are annexed hereto as Exhibit A.

[2] In addition to the fact that discovery is closed and plaintiff did not question any of the named officers about their responsibility to pay punitive damages during their depositions, plaintiff's argument that the City of New York indemnifies members of the NYPD for punitive damages is irrelevant. Rather, the Port Authority does not indemnify its officers against punitive damage



if it decides to make a punitive damage award, to set an amount that conforms to the purpose of punitive damages while staying within the confines of the law regarding such awards. Plaintiff has conceded that the Port Authority is the main party at interest and therefore there should not be any individual liability against the officers. As the Port Authority cannot be assessed punitive damages (*see Rose v. Port Auth. of New York and New Jersey*, 13 F.Supp.2d 516, 524 (S.D.N.Y. 1998); *Vernon v. Port Auth. of New York and New Jersey*, 154 F.Supp.2d 844, 860 (S.D.N.Y. 2001), plaintiff is attempting to mislead the jury away from the main issues on liability and limit the officers' testimony regarding their financial ability to pay while refusing to withdraw plaintiff's claims for punitive damages.

Therefore, defendants respectfully request that the issue of qualified immunity based on the special interrogatory responses be decided before the jury determines damages to avoid an inconsistent verdict, additional testimony regarding the officers' finances that may be unnecessary, and ultimately serves the interest of all parties.

*Requested Process for Special Interrogatories, Plaintiff's Position*:

Plaintiff objects to Defendants' proposed procedure, which will both confuse the jury and waste its time. The proper / optimal procedure is for the jury to come back with their verdict as to the various claims and damages, and only then (if Plaintiff wins on a claim or claims) for the Court to submit appropriate interrogatories to the jury that bear on the Court's ultimate determination of whether the defendants are entitled to qualified immunity.[3] This is the procedure most frequently followed by the Courts in the Southern and Eastern Districts of New York. *See*, e.g., Alla v. Verkay, 979 F. Supp. 2d 349, 369 *et seq.* (E.D.N.Y. 2013) (evaluating the propriety of defendants' proposed special fact interrogatories after the jury had returned its verdict and awarded both compensatory and punitive damages).

Defendants' proposed procedure will create confusion and waste of time for the jurors for multiple reasons. The jury will wonder why, and speculate as to why, they have to answer these fact questions in addition to deciding liability and damages. It will also further complicate the jury charge, which requires the Court to explain, and for the jurors to apply, that the burden of proof falls on Plaintiff on all of his claims except for his unlawful seizure / false arrest claim.[4] If

---

awards and if the Port Authority determines to resolve a case involving punitive damages, that decision is made on a case-by-case basis based upon the specific facts and circumstances involved in the lawsuit.

[3] As set forth in Plaintiff's objections to Defendants' proposed special fact interrogatories, filed herewith, none of Defendants' proposed interrogatories are proper and relevant and not already implicitly answered in a manner that is determinative of the qualified immunity issue by the underlying verdict.

[4] Where, as here, "an arrest is not made pursuant to a judicial warrant, the defendant in a false arrest case bears the burden of proving probable cause as an affirmative defense." Dickerson v. Napolitano, 604 F.3d 732, 752 (2d Cir. 2010) (citing Broughton v. State, 37 N.Y.2d 451, 458 (1975) ("The cases uniformly hold that where the arrest or imprisonment is extrajudicial, that is, without legal process or color of legal authority, it is not necessary to allege want of probable cause



3

Defendants' proposed procedure is followed, then the Court will additionally have to explain to the jury and ask them to apply, "the principle that, as to the facts necessary to establish [an individual defendant's] entitlement to qualified immunity, [the individual defendant] ha[s] the burden of proof." Outlaw v. City of Hartford, 884 F.3d 351, 370 (2d Cir. 2018). *See also*, Outlaw at 368: Usually, if a jury trial has been properly demanded, the factfinder for such questions will be a jury, *see* Fed. R. Civ. P. 38(a) ("The right of trial by jury as declared by the Seventh Amendment to the Constitution--or as provided by a federal statute--is preserved to the parties inviolate."). The jury may be asked to make its findings by answering special interrogatories. *See, e.g.*, Kerman, 374 F.3d at 109. When such interrogatories are used, of course, the court will need to give the jury proper "instructions and explanations," Fed. R. Civ. P. 49(a)(2), 49(b)(1), to enable the jury to make its findings in accordance with, *inter alia*, the proper allocation of the burden of proof.

Defendants also erroneously suggest that the jury should be asked to determine if the defendants are entitled to qualified immunity. *See supra* ("[s]hould the jury find that the police officers' conduct was objectively reasonable based on the answers to the special interrogatories, . . ." As Plaintiff noted on page 60 of the parties' joint jury instructions (dkt # 138), qualified immunity is a question of law for the Court. *See*, Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007) ("Once the jury has resolved any disputed facts that are material to the qualified immunity issue, the ultimate determination of whether the officer's conduct was objectively reasonable is to be made by the court."). With regard to the affirmative defense of qualified immunity, the jury is only to (under facts and circumstances where it would be appropriate) determine facts. The question of whether the officer's conduct was objectively reasonable in the context of qualified immunity is solely for the Court.

Defendants' arguments about punitive damages are a farce. As has already been submitted to the Court in connection with Plaintiff's opposition to Defendants' motions *in limine* (dkt # 151 at Point I), a jury assessed punitive damages against Sergeant Buckner in Ortiz v. Buckner, 12cv2068 (RRM) (E.D.N.Y.). Following that verdict the Port Authority reached a settlement with plaintiff's counsel whereby the Port Authority paid the entirety of the settlement monies to resolve the entire case, and Sergeant Buckner paid nothing whatsoever. The Court therefore need not, and should not, accept the representation made, *supra*, that "the individual defendants are covered for compensatory damages, but not punitive damages under the applicable collective bargaining and indemnification agreements,"[5] because we know that, as for Sergeant Buckner, the Port Authority

---

in a false imprisonment action. . . . Indeed, the burden is on the defendant to prove the opposite. . . . as an affirmative defense"). And Defendants bear the burden of establishing probable cause as to each element of the crime or offense / violation for which a person is arrested. *See*, e.g., Davis v. City of New York, 902 F. Supp. 2d 405, 426-427 (S.D.N.Y. 2012) (Scheindlin, J.) ("Probable cause must extend to every element of the crime for which a person is arrested.") (quoting Alhovsky v. Paul, 406 F. App'x 535, 536 (2d Cir. 2011)).
[5] I note further that Plaintiff, in his document request 26 (which is within Plaintiff's trial Exhibit 29, which has been provided to Chambers), requested that Defendants "[i]dentify and produce any documents concerning any requests for legal representation, legal representation agreements, or



in fact has already indemnified him for punitive damages that were assessed against him, and there is every reason to expect that if punitive damages are assessed against any of the individual Defendants in the case at bar an arrangement will again be made such that the Port Authority will pay all of the money.

     The reality in the case at bar is that the Port Authority is the real party in interest and, as noted, there is every indication that the Port Authority will indemnify the individual Defendants for any award of compensatory and/or punitive damages. The Court should require the Defendants to, forthwith, provide to the Court and to Plaintiff information akin to that provided in "Gyasi" interrogatories 5 and 6,[6] *i.e.*, to state clearly (and without evasion, and provide the relevant case names, docket numbers, and documents): (1) any time during the past 10 years in which the Port Authority Law Department has represented a member of the Port Authority Police Department (PAPD) and punitive damages have been assessed against that member of the PAPD, and the Port Authority has required the member of the PAPD against whom punitive damages were assessed to pay any part of the verdict or any settlement reached after the verdict was rendered; and (2) to identify all cases during the past 10 years in which the Port Authority has indemnified a member of the PAPD (or reached a post-verdict settlement paying all settlement monies in a case where punitive damages had been assessed against a member of the PAPD) for punitive damages.

     If, as seems likely, the Port Authority is the real party in interest in this case, then the individual defendants should not be permitted to mislead the jury into believing that they will be responsible for paying an award of punitive damages. Such a result would be profoundly contrary to the public interest in this civil rights case. Given the reality of the Port Authority's indemnification of members of the PAPD its Law Department represents in litigation, the Court should not permit the Defendants to present any testimony or other evidence of their financial conditions and ability to pay a potential punitive damages award and, if they do, then the jury should be instructed that the Port Authority will indemnify the individual Defendants for any punitive damages that it awards. In the situation presented here, where the governmental entity indemnifies its officers in the event of punitive damages awards, the Second Circuit has made clear

---

indemnification agreements concerning any of the individual defendants, and/or the terms of their employment (including but not limited to any terms of collective bargaining) concerning any legal representation agreements or indemnification agreements that bear upon representation or indemnification in the present action." Defendants responded as follows: "Objection. This demand calls for privileged information protected by the work product doctrine and the attorney client privilege." Yet now that they wish to present the proposition that the individual Defendants are on the hook for punitive damages in connection with their proposed qualified immunity procedure they have no problem describing the substance of their indemnification arrangements. This is highly improper, and the Court should as a matter of fairness make them provide all documents responsive to document request # 26 forthwith.

[6] "Gyasi" refers to Kwabena Gyasi v. City of New York, et al., 05 Civ. 9453 (SAS) (GWG). The City of New York's November 27, 2006 responses to these interrogatories in Gyasi are annexed as **Exhibit 1** hereto.



that a plaintiff is permitted to present evidence of the fact of indemnification.  Mathie v. Fries, 121 F.3d 808 (2d Cir. 1997).  As the Mathie Court wrote:

> [a]lthough we do not decide the question of whether a fact-finder can rely upon the existence of an indemnity agreement in order to increase an award of punitive damages, we rule that a fact-finder can properly consider the existence of such an agreement as obviating the need to determine whether a defendant's limited financial resources justifies some reduction in the amount that would otherwise be awarded. It would be entirely inappropriate for a defendant to raise the issue of his limited financial resources if there existed an indemnity agreement placing the burden of paying the award on someone else's shoulders. See Kemezy v. Peters, 79 F.3d 33, 37 (7th Cir. 1996) ("The defendant should not be allowed to plead poverty if his employer or an insurance company is going to pick up the tab.").

Id. at 816 (emphasis in original).  See also, Dallas v. Goldberg, No. 95 Civ. 9076, 2002 U.S. Dist. LEXIS 8829, *14-15 (S.D.N.Y. May 20, 2002) (Swain, J.) ("[t]he uncertainty of indemnification here is not an appropriate ground for preclusion of the evidence proffered by Plaintiff, if such evidence is presented in rebuttal to an argument for reduction of an otherwise appropriate punitive damages award").

Judge Scheindlin has also discussed the impropriety of misleading the jury concerning punitive damages in her comments at pages 5-8 of a June 29, 2006 conference in Gyasi (transcript annexed as **Exhibit 2** hereto) which led to the issuance of the Gyasi interrogatories:

> THE COURT: I understand.  But Mr. Berger [plaintiff's counsel] claims the reality is, despite that, you always indemnify the officer for punitive damages, and that's why he wants the discovery, because I agree with him, I am not going to mislead the jury.  If in fact discovery were to show that 99 out of 100 times when there has been a punitive damage award, in reality, the city has always indemnified, then that's the reality.  That's the reality, and I am not charging something that's not true.
>
> ...
>
> Unless you're prepared to concede that if a punitive damage award is made by the jury, the city will pay, at some point this discovery [the Gyasi interrogatories] is necessary so as not to mislead the jury.  I am not talking about today. I am not going to rule today, but I want you to understand the issue. If this case goes to trial, if there is a liability finding, if the jury then gets punitive damages as an issue, I am not going to mislead them, thinking that it comes out of the poor officer's pocket and have the poor officer say, I have a wife and three kids and a mortgage, I can barely afford the payments, and I earn only 38,000, whatever. I am not going to have all of that. If in fact the reality is that in the last 100 punitive damages awards the city has always indemnified, I am not going to have that testimony at all about his wife, kids and poor salary, because it's all irrelevant.



> ...
>
> There is a historical record. That's the point of the discovery. It may be a decision over your head, but the decision may always come out the same way. If the conduct occurred during the line of duty, so to speak, if that's the reality, that discovery would show that in the last 100 cases that punitive damages were awarded the city always paid, or 99 times out of 100 paid, if that's what the discovery would show, then I wouldn't allow any evidence at all about the poor officer and his tax return because it's totally irrelevant.
>
> ...
>
> You're not listening. It [the indemnification decision] is case by case, but if it always comes out the same way, then that's what the discovery would show. It's case by case, but at the end, if it's always the same, 100 times, that's what the reality is.  I am going to allow that discovery if and when this is an issue. It may never be an issue. The case may settle, liability may be lost, this and that.  I have no idea what is coming, but somewhere down the road I am not going to mislead the jury to worry about the poor officer and his bills because that's irrelevant.

As a result of the Port Authority's indemnification of officers in the event of an award of punitive damages, there is no need for the individual Defendants to provide information about their financial ability to pay an award of punitive damages – since an their ability to pay is irrelevant if the Port Authority indemnifies (either directly if judgment is entered, or via a post-verdict settlement prior to the entry of judgment as occurred in <u>Ortiz v. Buckner</u>).  With this otherwise irrelevant evidence removed from the picture, the focus of the jury's decision to award punitive damages concerns the actions of the officers and the need to deter other police officers.  Equally important, if the jury decides that an award of punitive damages is appropriate, then there is no reason to delay its determination of the amount of those damages – it should not have to be impaneled anew to consider additional evidence (especially since there is no additional evidence which is relevant, and especially since Plaintiff will not elicit from the individual Defendants any evidence regarding their respective financial conditions).  For if, following the verdict, the Court determines that any of Defendants' proposed special fact interrogatories should be presented to the jury, and if the jury answers the interrogatories in a way that may seem favorable to the individual Defendants, that does not mean there will be a grant or denial of qualified immunity by the Court immediately thereafter.  Rather, there will be subsequent motion practice, which the Court may not resolve for some significant amount of time.  Under the Defendants' proposed procedure, if the Court denies the motion for qualified immunity, then there would need to be a new trial on punitive damages with a newly impaneled jury that is unfamiliar with the evidence at trial.  And, under the Defendants' proposed procedure, even if the Court grants the motion for qualified immunity, if there is a successful motion for reconsideration or a successful appeal by Plaintiff, then it will be far more efficient to simply reinstate the verdict then to have a new trial on damages.

The proper, and far more efficient, procedure is for the jury to render its verdict and to award any compensatory and punitive damages and only then, if there is a verdict for Plaintiff on

4 World Trade Center  I  150 Greenwich Street, 24 Floor  I  New York, NY 10007  I  T: 212-435-3431  I  F: 212-435-3834  I  calterman@panynj.gov



any of her claims, for the Court to evaluate whether to submit any of Defendants' proposed special fact interrogatories to the jury.

Respectfully submitted,

/s/ Cheryl N. Alterman
Cheryl N. Alterman
Port Authority Law Department
*Attorney for Defendants*
4 World Trade Center
150 Greenwich Street
New York, NY 10007
(212) 435-3431


 /S/ Jeffrey A. Rothman
Jeffrey A. Rothman
*Attorney for Plaintiff*
305 Broadway, Suite 100
New York , New York 10007
(212) 227-2980