# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

ATHINA KOSMIDIS, as executrix of the estate of CONSTANTINO KOSMIDIS,

                        Plaintiff,

―against―

THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY, PORT AUTHORITY POLICE SERGEANT BERNARD BUCKNER, PORT AUTHORITY POLICE OFFICE STEVEN O'SHEA; PORT AUTHORITY POLICE OFFICER ALEXANDER VELEZ, JR.; PORT AUTHORITY POLICE OFFICER JOSEPH RICCARDI, JR.; JOHN DOES; and RICHARD ROES,

                        Defendants.

------------------------------------------------------------------------X

No. 1:18-cv-08413-JLR-RWL

**[PROPOSED] SPECIAL INTERROGATORIES ON QUALIFIED IMMUNITY**[1]

---

[1] *Plaintiff's objections are set forth throughout in italics.*

*Plaintiff notes at the outset that there can never be qualified immunity on a First Amendment Retaliation claim, because if an individual defendant is found liable on that claim then that ipso facto means that they acted with an intent that is prohibited by law.  See, e.g., Locurto v. Safir, 264 F.3d 154, 169 (2d Cir. 2001):*

> *But where a more specific intent is actually an element of the plaintiff's claim as defined by clearly established law, it can never be objectively reasonable for a government official to act with the intent that is prohibited by law. See [Crawford-El v. Britton, 523 U.S. 574 (1998)] at 589 ("Thus, although evidence of improper motive is irrelevant on the issue of qualified immunity, it may be an essential component of the plaintiff's affirmative case."); Sheppard [v. Beerman], 94 F.3d at 828 [(2d Cir. 1996)] ("The employer's actual (subjective) motive is not irrelevant in a qualified immunity inquiry" on a First Amendment retaliation claim.).*

1. Did the decedent Constantino Kosmidis yell and use abusive or obscene language directed at the Delta employees while he was a passenger on a flight from Greece to New York (John F. Kennedy International Airport)?

    YES _____          NO _____

*Plaintiff's objection:*

*Plaintiff objects that this question is irrelevant to any issue related to liability or qualified immunity in this case. Defendants have represented that they only assert probable cause to arrest Mr. Kosmidis for disorderly conduct, N.Y. Penal Law § 240.20 (1) or (3) (see, dkt # 143-2, emails with counsel for Defendants in which she so represents).[2] Because disorderly conduct is only a non-criminal offense (which is also known as a non-criminal violation) under New York law, and not a crime, an arrest for disorderly conduct can only be lawfully based upon conduct that is committed in an arresting police officer's presence. See, New York Criminal Procedure Law § 140.10. It is undisputed that none of the individual Defendants were on the flight from Athens to New York City with Plaintiff. As an arrest for the non-criminal offense of disorderly conduct cannot lawfully be based upon conduct that was committed outside of an arresting officer's presence, any special fact interrogatories concerning what occurred or did not occur on the flight are irrelevant. Additionally, Sergeant Buckner has stated clearly that he determined that Mr. Kosmidis should be issued a summons for disorderly conduct based solely on what he claims that Mr. Kosmidis did in Buckner's presence, and not stemming from what had happened on the airplane. See, Buckner dep. at 76:11-77:9 (dkt # 67-1).*

*It is Defendants' burden to establish their eligibility for qualified immunity. "Because qualified immunity is an affirmative defense, . . . the defendants bear the burden of showing that the challenged act was objectively reasonable in light of the law existing at the time." Mitchell v. City of N.Y., 841 F.3d 72, 79 (2d Cir. 2016) (quoting Tellier v. Fields, 280 F.3d 69, 84 (2d Cir. 2000)); see also Palmer v. Richards, 364 F.3d 60, 67 (2d Cir. 2004). For a special fact interrogatory related to qualified immunity to be proper, the answer that a jury would give to the question must be such that it would assist the Court in deciding whether or not qualified immunity should be granted to any individual Defendant as to any particular claim. The answer to the instant proposed question would not assist the Court in that regard, because even if it is answered in the affirmative that does not bear upon any legal issue in this case. See, e.g., Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007) ("'Arguable' probable cause should not be misunderstood to mean 'almost' probable cause."). As Judge Nathan stated at page 9 of her Memorandum Opinion & Order of September 28, 2021 deciding Defendants' summary judgment motion (dkt. # 108) (hereafter, "Kosmidis SJ decision") arguable probable cause "turns on whether 'a*

---

[2] *Under § 240.20 of the Penal Law of the State of New York a person commits the offense of disorderly conduct under those two subsections "when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: 1. He engages in fighting or in violent, tumultuous or threatening behavior; or … 3. In a public place, he uses abusive or obscene language, or makes an obscene gesture."*

> *reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law.'" (quoting Cerrone v. Brown, 246 F.3d 194, 202–03 (2d Cir. 2001). Because Defendants have represented that they only assert probable cause to arrest Mr. Kosmidis for disorderly conduct, N.Y. Penal Law § 240.20 (1) or (3), Defendants have not articulated, and cannot articulate, any crime that would have been committed even were this proposed question to be answered in the affirmative by a jury. And, of course, there is nothing about an affirmative answer to this question that would bear upon whether or not the Defendants are entitled to qualified immunity for committing excessive force upon Plaintiff after he was called off of the airplane and walked through the entirety of the jet-bridge.[3] See, Alla v. Verkay, 979 F. Supp. 2d 349, 369-370 (E.D.N.Y. 2013) "[I]t is the responsibility of the defendant to request that the jury be asked the pertinent question[s].... The Court did not present Verkay's proposed interrogatories to the jury for two reasons: the answers to his proposed questions were (1) not in dispute and (2) inadequate to give rise to qualified immunity." (quoting Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007)) (bracketing in original) (emphasis added).*
>
> *Plaintiff also objects to the proposed question because it is vague and / or compound.*

2. Did the decedent Constantino Kosmidis physically touch Delta employee Ms. Carmen Dunphy in a threatening manner during the flight?

    YES _____          NO _____

    Plaintiff's objection:

    > *See, Plaintiff's objection to proposed question # 1, which is reiterated here.*

3. Were the Port Authority Police Officers notified to meet decedent Constantino Kosmidis' flight at Delta's request for a disorderly passenger?

    YES _____          NO _____

    > *See, Plaintiff's objection to proposed question # 1, which is reiterated here.*

---

[3] *It is undisputed that the Defendants did not arrest Plaintiff, or otherwise lay a hand on him, until he had walked through the entirety of the jet-bridge after leaving the airplane. Defendants' narrative is that they did not touch Plaintiff or handcuff him until even farther away from the airplane, on a ramp area a short distance from where Plaintiff exited the jet-bridge and stepped onto the permanent part of the airport terminal structure (which ramp area was at that time closed to the public).*

4. Were the Port Authority Police Officers met by Delta employees at John F. Kennedy International Airport and informed of the Delta employees' interactions and observations of decedent Constantino Kosmidis during the flight?

   YES _____          NO _____

   *See, Plaintiff's objection to proposed question # 1, which is reiterated here.*

5. Were the Port Authority Police Officers asked to escort decedent Constantino Kosmidis off the flight by Delta Captain Atsalis?

   YES _____          NO _____

   *See, Plaintiff's objection to proposed question # 1, which is reiterated here. Plaintiff also notes that there is no claim asserted in this case related to Plaintiff being "escorted" or asked to leave the airplane prior to the other passengers, and it does not matter who asked Plaintiff to leave the airplane.[4] It is undisputed that Plaintiff voluntarily left the airplane at the request of some member(s) of law enforcement and walked without compulsion through the entirety of the jet-bridge. It is irrelevant to the resolution of any of the claims in this case whether or not the Port Authority Police Officers were asked to escort decedent Constantino Kosmidis off the flight by Delta Captain Atsalis.*

6. Did Port Authority Police Officers observe decedent Constantino Kosmidis yelling, cursing and moving his arms around when they arrived on the plane?

   YES _____          NO _____

   *See, Plaintiff's objection to proposed question # 1, which is reiterated here.*

   *Plaintiff also objects that, even if the jury answers this question in the affirmative, it will be irrelevant to the question of qualified immunity. Under the facts and circumstances of this case, the jury's verdict on unlawful seizure / false arrest will necessarily determine whether or not anything Mr. Kosmidis did in the presence of the individual Defendants provided them with probable cause to arrest for the two subsections of the disorderly conduct statute that they are relying on. If the jury marks the verdict form that Mr. Kosmidis was unlawfully seized / falsely arrested then - even if they would answer this question in the affirmative - that would necessarily mean that they concluded that the manner in which he was speaking and / or gesticulating, or his other conduct, would not lead a reasonable police officer to believe that all of the elements of the disorderly conduct statute for those two subsections had been satisfied. And, of course, the answer to the*

---

[4] Two of the individual Defendant Officers - O'Shea and Riccardi - have testified that they went on the airplane and escorted Plaintiff off the plane. Sgt. Buckner has testified that no member of the Port Authority police went on the airplane to get Mr. Kosmidis. Mr. Kosmidis has testified that federal officers escorted him off of the plane. And Mrs. Kosmidis testified that to the best of her recollection the people who took Plaintiff off the plane were not wearing uniforms.

*question would not bear upon whether or not it was objectively reasonable for an officer to use excessive force upon Plaintiff.  See also, Warren v. Dwyer, 906 F.2d 70, 77 (2d Cir. 1990) (Winter, J., dissenting)*:[5]

> *A major difficulty, of course, is that the court ruling on the qualified immunity issue must know what the facts were that the officer faced or perceived, and the finding of those facts appears to be a matter for the jury. This is the factual overlap referred to above, presumably to be handled by the framing of special interrogatories.*
>
> *Turning to the present case, the qualified immunity question is entirely resolved depending upon which version of the facts is accepted. On the one hand, Warren testified that Dwyer accosted him with his hand on his gun and thereafter arrested him for breach of the peace although Warren had done nothing but ask "What's wrong?" and "What is going on?". On the other hand, Dwyer testified that Warren was loud and abusive, ranted and raved and was creating enough of a fuss that Dwyer was fearful of a hostile crowd congregating.*
>
> *If Warren's version of the facts is accepted by the trier of fact, then there certainly was no probable cause because Warren had done nothing remotely criminal. Because the law was at the time clear that no probable cause existed under Warren's version, a qualified immunity defense would fail as a matter of law. As to Dwyer's version, if the jury found that Dwyer was reasonable in his evaluation of Warren's conduct and in believing that that conduct might lead to the creation of a hazardous condition, probable cause for the arrest existed. The qualified immunity defense would never be reached.*
>
> *In my view, therefore, the qualified immunity defense was either excluded as a matter of law or irrelevant. Nevertheless, the district court not only instructed the jury on the defense but essentially said that it could find for the defendant on that defense even if it accepted Warren's version of the facts. That was error, and I would therefore reverse.*

Plaintiff also objects because Plaintiff has a clearly established right under the First Amendment to curse at, and yell at, police officers.  See, City of Houston v. Hill, 482 U.S. 451, 461-463 (1987):

---

[5] In *Warren v. Dwyer* the majority decided that it was appropriate in that case for the ultimate question of qualified immunity to be decided by the jury.  The Second Circuit thereafter clarified that the ultimate question of qualified immunity is solely for the Court.  See, *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) ("*Once the jury has resolved any disputed facts that are material to the qualified immunity issue, the ultimate determination of whether the officer's conduct was objectively reasonable is to be made by the court.*")

> *[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.... [E]ven the 'fighting words' exception recognized in Chaplinsky v. New Hampshire ... might require a narrower application in cases involving words addressed to a police officer, because a properly trained police officer may reasonably be expected to exercise a higher degree of restraint than the average citizen, and thus be less likely to respond belligerently to 'fighting words'....*
>
> *The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state....*
>
> *Today's decision reflects the constitutional requirement that, in the face of verbal challenges to police action, officers and municipalities must respond with restraint....[T]he First Amendment recognizes, wisely we think, that a certain amount of expressive disorder not only is inevitable in a society committed to individual freedom, but must itself be protected if that freedom would survive.*

*(internal citations and quotations omitted).*

*There are numerous other cases where courts have held that members of the public have the right to insult, including to curse at, police officers (or other members of the public). See, e.g., Greene v. Barber, 310 F.3d 889 (6th Cir. 2002), which involved a lawyer who told a Police Lieutenant that he was "really being [an ] asshole," and proceeded to lecture the Lieutenant that plaintiff was "exercising my freedom of speech .... This is the United States of America and we have freedom of speech here." Id. at 892. This was held to be protected by the First Amendment, and the Sixth Circuit held that retaliatory action by the Lieutenant in response to it would violate clearly established constitutional dictates. See also, Sandul v. Larion, 119 F.3d 1250 (6th Cir. 1997) (finding protected First Amendment activity where plaintiff drove past a group of abortion protestors, "shouted 'f--k you,' and extended his middle finger to the group." Id. at 1252. "Thus, the use of the 'f-word' in and of itself is not criminal conduct." Id. at 1255, citing Cohen v. California, 403 U.S. 15 (1971) (holding that "Fuck the Draft" written on a jacket is protected First Amendment expression and that "one man's vulgarity is another man's lyric.") Cohen at 25. See also, McCurdy v. Montgomery County, 240 F.3d 512, 515 (6th Cir. 2001) (protected First Amendment activity to say to a policeman, "what the fu\*k do you want?" and "what the fu\*k is your job?"). "[A]dverse state action, motivated at least in part as a response to the exercise of the plaintiff's constitutional rights presents an actionable claim of retaliation." Id. at 520 (citation omitted). See also, Houghton v. Culver, 452 F. Supp. 2d 212, 222 (W.D.N.Y. 2006) (fact that plaintiff "used a profanity, or that he behaved belligerently" does not alone furnish probable cause for arrest); Lee v. McCue, 2007 U.S. Dist. LEXIS 57867 (S.D.N.Y. 2007) ["....words alone, even abusive ones, cannot give rise to probable cause to arrest...."]; Duran v. City of Douglas, 904 F.2d 1372, 1378 (9th Cir. 1990) ("[G]overnment officials in general, and police officers in particular, may not exercise their authority for personal motives, particularly in response to real or perceived slights to their dignity. Surely, anyone who takes an oath of office knows - or should know - that much.")"*

7. Did Port Authority Police Officers observe decedent Constantino Kosmidis yelling and cursing in the ramp area near the terminal gate, which is a public space?

        YES \_\_\_\_\_          NO \_\_\_\_\_

*See, Plaintiff's objections to proposed questions #s 1 and 6, which are reiterated here.*

*Plaintiff also objects because the Defendants concede that the public at that time was not permitted to go into that ramp area because Mr. Kosmidis' flight was an international flight and the passengers were required to proceed past that ramp area to customs; the officers had to move a barrier - that was in place to keep the public out of that ramp area - in order for Plaintiff to be brought into or to go into that ramp area.*

8. Did Port Authority Police Officers observe decedent Constantino Kosmidis attempt to walk away from them multiple times after he was escorted off the plane?

        YES \_\_\_\_\_          NO \_\_\_\_\_

*See, Plaintiff's objections to proposed questions #s 1 and 6, which are reiterated here.*

*Plaintiff also objects that it is not illegal to attempt to walk away from police officers unless one had already been placed under arrest. And anything Mr. Kosmidis did after he had been placed under arrest cannot provide probable cause for his arrest. See, <u>Kosmidis SJ decision</u> at 8:*

> *And while Kosmidis concedes that he cursed at the officers, according to his testimony he only did so <u>after</u> he was arrested. See <u>Fernandez v. City of N.Y.</u>, 457 F. Supp. 3d 364, 386–87 (S.D.N.Y. 2020) ("Because the brothers' verbal altercation on the sidewalk happened after David's arrest, that altercation did not provide probable cause for that arrest."). All of the Defendants' probable cause arguments, that is, rely on the Court's adoption of contested facts.*

*(Emphasis in original).*

9. Did Port Authority Police Officers observe decedent Constantino Kosmidis refuse to comply with their directives, including attempting to light a cigarette after he was instructed by the officers, he could not smoke in the ramp area?

        YES \_\_\_\_\_          NO \_\_\_\_\_

*See, Plaintiff's objections to proposed questions #s 1 and 6, which are reiterated here.*

-8-

> *Defendants have stated that they are not relying on any legal authority for probable cause to arrest Plaintiff other than subsections 1 and 3 of the disorderly conduct statute, and those subsections of that statute have nothing whatsoever to do with attempting to light a cigarette.*

10. Did Port Authority Police Officers observe decedent Constantino Kosmidis lunge towards defendant Sgt. Buckner in a threatening manner in the ramp area near the terminal gate requiring him to be handcuffed?

    YES \_\_\_\_\_          NO \_\_\_\_\_

    > *See, Plaintiff's objections to proposed questions #s 1 and 6, which are reiterated here.*

11. Did Port Authority Police Officers observe decedent Constantino Kosmidis fall to the ground as a result of the handcuffing process?

    YES \_\_\_\_\_          NO \_\_\_\_\_

    > *See, Plaintiff's objections to proposed questions #s 1 and 6, which are reiterated here.*

    > *If the jury marks the verdict sheet that Plaintiff was unlawfully seized / falsely arrested, or that he was subjected to excessive force, then the fact that he also fell to the ground as a result of the handcuffing process does not bear upon the Court's determination of the qualified immunity issue.*

Respectfully submitted,

/s/ Cheryl N. Alterman
Cheryl N. Alterman
Port Authority Law Department
*Attorney for Defendants*
4 World Trade Center
150 Greenwich Street
New York, NY 10007
(212) 435-3431


 /S/ Jeffrey A. Rothman
Jeffrey A. Rothman
*Attorney for Plaintiff*
305 Broadway, Suite 100
New York , New York 10007
(212) 227-2980